## J. Edward Connelly Associates, Inc. v. Landmark Savings Association

*Fellheimer, Eichman & Goodman*, for plaintiff.
*Dickie, McComey & Chilcote*, for defendant.

STRASSBURGER, *J.*, April 18, 1985—On April 9, 1985, plaintiff, J. Edward Connelly Associates, Inc. (Connelly), filed a complaint in equity against defendant, Landmark Savings Association (Landmark). The complaint alleged that Connelly, a shareholder in Landmark, had made written demand to inspect and copy Landmark's shareholder list. Connelly's avowed purpose was (1) to consult with other shareholders and possibly obtain proxies in connection with Landmark's scheduled shareholder's meeting on May 21, 1985, and (2) possibly to purchase additional shares of stock. The complaint further alleged that Landmark had refused to allow Connelly to inspect the shareholder's list.

Contemporaneously with the filing of the complaint, Connelly filed a petition for preliminary injunction, and by order of this court, a hearing was scheduled for April 12, 1985.

During a lengthy colloquy in chambers, the parties set forth their legal positions.* Connelly based its case upon its belief that Landmark was subject to the provisions of §308(B) of the Business Corporation Law (BCL), 15 P.S. §1308(b), which provides in relevant part:

"Every shareholder shall have a right to examine, in person or by agent or attorney, at any reasonable time or times, for any reasonable purpose, the share register, . . . and make extracts therefrom." While a

---

* Those who are wont to criticize financial institutions for not helping to solve the problems of unemployment should be aware of the inroads this institution is making toward remedying the lawyers' glut, as eleven attorneys crowded into chambers.

shareholder's rights under this statute are not absolute, it is an extremely rare situation in which a shareholder can be denied access to the shareholder list. Goldman v. Trans-United Industries, Inc., 404 Pa. 288, 171 A.2d 788 (1961).

Connelly contended that §308(B) was made applicable to Landmark by virtue of Article XI of its Restated Articles of Incorporation which reads:

"Except to the extent inconsistent with the Pennsylvania [Savings Association] Code or these Restated Articles of Incorporation, the provisions of the Pennsylvania Business Corporation Law shall apply to the Association." Connelly asserted that the Savings Association Code of 1967 (SAC) did not provide for demands for shareholder lists.

Landmark's legal position was diametrically opposed. It asserted that the BCL was inapplicable to Landmark, a savings association. Rather, Landmark contended that the instant situation was governed by §612(b) of the SAC, 7 P.S. §6020-92(b), which provides in relevant part:

"The department [of banking] shall by regulation or ruling in any specific case, establish procedures for communication by one member of an association with other members of the same association, provided, that it determines that the request is made for legitimate purposes and can be complied with in such manner as not to disclose the investments of any members of the association. Any such communications shall be subject to the terms and conditions including payment of costs prescribed by the department."

Thus Landmark's primary position was that Connelly's request to this court for relief was misdirected; rather it should have been directed to the department of banking.

In addition, Landmark also argued that if this court disagreed with its position that the SAC rather than the BCL was applicable, then for various reasons this court should rule that Connelly's motives were improper and that it was thus not entitled to a shareholder list.

During the colloquy both Connelly and Landmark agreed that the legal issue as to whether the BCL or the SAC applies should be addressed first by the court. Only if the court concluded that the BCL applied would it be necessary to take testimony as to whether Connelly's motives for seeking the shareholder list were improper.

At the time set for hearing on April 12, 1985, chief counsel for the Pennsylvania Department of Banking (department) appeared and filed a petition to be allowed to file an amicus brief and present oral argument or in the alternative to intervene.

Prior to reaching the issue of which statute applies, it is necessary to deal with the department's petition to intervene. Although it was this court's impression at the colloquy that the department was satisfied with its participatory status as amicus curiae, the department in its latest brief has reiterated its desire to intervene. Its petition will be denied. Assuming arguendo that the department's duty to enforce the SAC constitutes a "legally enforceable interest" so as to grant the department standing to intervene under Pa.R.C.P. 2327(4), intervention is properly refused under all three of the sub-paragraphs of Pa.R.C.P. 2329. First, the department's intervention would deprive the court of common pleas of jurisdiction since, as an agency of the Commonwealth, the department can be sued only in Commonwealth Court. Thus the department's position "is not in subordination to and recognition of the properiety of the action". Pa.R.C.P. 2329(1).

Henderson v. Delaware River Joint Toll Bridge Com., 362 Pa. 475, 66 A.2d 843 (1949), cert. denied, 338 U.S. 850; Mozino v. Township of Upper Darby, 42 Del. Co. Rep. 101 (1955).

Second, "the interest of the petitioner (department) is already adequately represented". Pa.R.C.P. 2399(2). The same arguments being advanced by the department have been quite capably presented by Landmark's battalion of attorneys — in-house, local, and New York.

Finally, the department's intervention would "unduly delay . . . the adjudication of the rights of the parties". Pa.R.C.P. 2329(3). The right to a shareholder list is meaningless if it cannot be exercised timely. See Goldman v. Trans-United Industries, Inc., supra. In light of this court's view that the SAC must prevail over the BCL, it would be senseless circumlocution to allow the department to intervene, necessitating transfer to the Commonwealth Court, so that the department could present to that court the same argument which this court has already found persuasive, all the while the clock continuing to tick toward the May 21, 1985 shareholders' meeting.

On the merit, as just stated, this court is of the view that §612 of the SAC controls. Connelly argues that §612 was not meant to deal with stock associations but rather to deal with the confidentiality problem in mutual associations where a member's voting power is determined by how much is in the member's account. While that was undoubtedly the original purchase of §612 when the SAC was passed in 1967 since stock savings associations were not authorized until 1982, Connelly's argument ignores the clear language of the 1982 amendment to §102(17) of the SAC. That amendment added to the definition of "member" the language "a person

owning one or more shares of permanent reserve fund stock of a permanent reserve fund stock association". Thus any communication between shareholders of a stock association is a communication between "members" as set forth in §612. Where the words of a statute are clear, there is no need to resort to any other rules of construction. Statutory Construction Act of December 6, 1972, P.L. 1339, 1 Pa.C.S. §1921(6); F. W. Woolworth Co. v. City of Pittsburgh, 2 Pa. Commw. 338, 284 A.2d 143 (1971).

If resort were made to canons of construction, this Court would give considerable deference to the construction placed on the SAC by the department, the agency charged with its interpretation and enforcement. Statutory Construction Act, 1 Pa.C.S. §1921 (6)(8); Spicer v. Com., Dept. of Public Welfare, 58 Pa. Commw. 558, 428 A.2d 1008 (1981); Beneficial Consumer Discount Co. v. Whitesell, 45 Pa. Commw. 156, 404 A.2d 794 (1979).

This court is not at all impressed by Connelly's contention that the department in the past has never regulated or restricted a shareholder's right of access to the shareholder's list of any Pennsylvania banking institution. Stock savings associations have been authorized only since 1982. While §1218 of the Banking Code, 7 P.S. §1218(a), in language similar to that of §1308(B) of the BCL, provides that the shareholder list of every Pennsylvania commercial bank, trust company or savings bank "shall be available for inspection by any shareholder for any proper purpose", that provision does not apply to savings associations and cannot override the clear language of §612 of the SAC applicable to such institutions. Connelly's argument that savings associations are so similar to other banking institutions that the denial of a shareholder list is unjustified in

this instance is premature. The issue being ruled upon is not whether Landmark can deny a shareholder list, but rather what body shall in the first instance rule on the question of whether Landmark can deny the list. Section 612 of the SAC is clear that the body must be the department. Should the department refuse to compel Landmark to divulge the list, the time will then be ripe for Connelly to make whatever comparisons with other banking institutions it deems appropriate in an attempt to show that the department abused its discretion.

Given that Connelly has failed to show the clear right to relief that is a prerequisite for preliminary injunctive relief, Sameric Corp. v. Cross, 448 Pa. 497, 295 A.2d 277 (1972), the petition for preliminary injunction must be denied.

An appropriate decree will be entered.

## DECREE

And now, this April 18, 1985, it is hereby ordered and decreed as follows:

(1) the petition of the Pennsylvania department of banking for leave to intervene is denied; and

(2) the petition for preliminary injunction filed by plaintiff, J. Edward Connelly Associates, Inc. is denied.