In re UNITED CHURCH OF THE MINISTERS OF GOD, Debtor.

In re Gary Michael HEIDNIK, Debtor.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DEBTOR, Plaintiff,

v.

PROVIDENT NATIONAL BANK and Merrill Lynch, Pierce, Fenner & Smith, Inc. and Lisa Ann Thomas, Defendants.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,

v.

UNITED CHURCH OF THE MINISTERS OF GOD, et al., Defendants.

Lisa Ann THOMAS, Plaintiff,

v.

UNITED CHURCH OF THE MINISTERS OF GOD, et al., Defendants.

Bankruptcy Nos. 87–01910S, 87–02045S. Adv. Nos. 87–0393S, 87–0375S.

United States Bankruptcy Court, E.D. Pennsylvania.

May 19, 1987.

**272**

Albert A. Ciardi, Jr., Philadelphia, Pa., for creditors' committee.

Donald M. Collins, Stephen C. Baker, Philadelphia, Pa., for Merrill Lynch.

Nathan B. Feinstein, Philadelphia, Pa., for Provident Nat. Bank.

Charles M. Golden, Philadelphia, Pa., for debtor in Bkcy. 87–01910S.

A. Charles Peruto, Jr., Philadelphia, Pa., for debtor in Bkcy. No. 87–02045S.

Sidney B. Klousky, Philadelphia, Pa., for the Estate of Deborah Dudley.

Joseph F. Busacca, Philadelphia, Pa., for Lisa Ann Thomas.

Julie Shapiro, Philadelphia, Pa., for Betty Heidnik.

Neil Perloff, Philadelphia, Pa., for Estate of Sandra Lindsay.

Joseph J. DiPrimio, Fern Lynn Kletter, Philadelphia, Pa., for the Bureau of Child Support.

Joseph G. Caruso, Philadelphia, Pa., for Jacqueline Askin.

Perry DeMarco, Philadelphia, Pa., for Jacqueline Askin.

Joseph P. Grimes, Philadelphia, Pa., for Josefina Rivera.

Linda Shafer, Ass't. U.S. Atty., Philadelphia, Pa., for Internal Revenue Service, Veterans Administration, and Peace Corps.

Prince Atlee Thomas, Philadelphia, Pa., for State.

Andrew Bralow, City Solicitor's Office, Enforcement Division, Philadelphia, Pa., representing City's interest.

Agnes Adams, Donald Morman, Internal Revenue Service, Philadelphia, Pa., for I.R.S.

Robert M. Ratchford, Sp. Asst. U.S. Atty., Philadelphia, Pa., for U.S.A., I.R.S.

Barbara Koppa Gerolamo, U.S. Atty's. Office, Philadelphia, Pa., for I.R.S., V.A., Peace Corps.

Jane MacElhenny, Philadelphia, Pa., for Betty & Jesse Heidnik.

Karen L. Stevens, Office of Chief Counsel, Commonwealth of Pennsylvania, Dept. of Revenue, Harrisburg, Pa., for Commonwealth of Pa.

Robert Szwajkos, Philadelphia, Pa., trustee/United Church of the Ministers of God, Bankruptcy No. 87–01919S.

Leslie B. Baskin, Philadelphia, Pa., trustee/Gary Michael Heidnik, Bankruptcy No. 87–02045S.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Like many of the unpleasantries which arise in our society, the developments in the saga of Gary Michael Heidnik (hereinafter referred to as "Heidnik") and the United Church of the Ministers of God (hereinafter referred to as "the Church"), of which Heidnik is self-proclaimed "Bish-

op," have been placed on the doorstep of the bankruptcy courts, due undoubtedly to the one aspect of this affair which has a pleasant twist: the alleged perpetrator of most hideous crimes to most helpless members of our society has amassed an estate of over $500,000.00 which may eventually be placed into the deserving hands of those victims.

Before us is (1) A hotly-contested Motion of a conservator appointed by state court about two hours after the Church filed its bankruptcy petition, requesting us, pursuant to 28 U.S.C. §§ 1334(c)(2) or (c)(1), to abstain or remand this proceeding back to the state courts from which it was removed; (2) A less hotly-contested adversarial proceeding filed by the Creditors' Committee, ostensibly representing the common interests of Heidnik's victims, which seeks to enjoin the state court proceedings; and (3) Virtually uncontested Motions requesting the appointment of a Trustee or Trustees for the estates of both Debtors.

We hold that the automatic stay rendered void all actions by the state court subsequent to the Church's filing, including the Order appointing the conservator. While we believe that the conservator's very existence as such is therefore negated, we assume *arguendo* that it has standing to pursue the Motion to abstain or remand, and determine that we must deny this Motion because we believe that the state court action is a most basic "core" proceeding, that 28 U.S.C. § 1334(c)(2) does not authorize abstention or remand of a "core" proceeding, and that we should not exercise our discretion under 28 U.S.C. § 1334(c)(1) to remand such a matter. Finally, because we perceive more than a potential conflict between the estates of the Church and of Heidnik, we are somewhat reluctantly appointing a separate Trustee for each.

The sequence of legal proceedings which have developed in the aftermath of the highly-publicized arrest of Heidnik, in the early morning hours of March 25, 1987, on charges of raping, torturing, and imprisoning a number of mentally-retarded young women in the basement of his home, murdering at least two of his victims, and dismembering the corpse of at least one, began on April 6, 1987, when Lisa Ann Thomas, one of the surviving victims, brought an action in equity in the court of Common Pleas of Philadelphia County (hereinafter referred to as "The C.P. Court"), later joined by at least some of the other victims or estates of those who had been allegedly murdered, against the Church and Heidnik to enjoin them from transferring the Church's assets and to appoint a conservator. The Church, created by Heidnik and of which he was the self-appointed "Bishop" and empowered to control its assets, had owned, at the time of Heidnik's arrest, assets valued in excess of a half million ($500,000.00) dollars, most of which was in the form of stock holdings in a securities account with Merrill Lynch, Pierce, Fenner, and Smith (hereinafter referred to as "Merrill Lynch"). That same day, Merrill Lynch also filed an equity action, in the nature of interpleader, requesting permission to deliver the assets of the Church's securities account to the C.P. Court. Named as defendants in that action were the Church, Heidnik, his estranged wife Betty, the Internal Revenue Service, the Commonwealth, the City, and the Veterans Administration and the Peace Corps, the latter two of which were named as co-beneficiaries upon dissolution of the Church in its By-laws.

A Temporary Restraining Order (hereinafter referred to as "TRO") was entered on the date of filing by the Honorable Samuel M. Lehrer, the C.P. Court Judge to whom the case was assigned, and a hearing was scheduled on April 9, 1987. On the latter date, the Court ordered that the two state court actions described above be at least provisionally consolidated, issued a further Order extending the TRO until April 15, 1987, pending a further hearing. On April 15, 1987, after a further hearing, which was attended by Counsel for the Church, who declined to present any testimony, Judge Lehrer took the matter under advisement, indicating that a ruling would be forthcoming "within a matter of days."

Our Court was first introduced the Heidnik affair by the Church's filing a voluntary Chapter 11 Petition in our Court at 9:40 A.M. on April 20, 1987. Later that morning, at 11:15 A.M., Judge Lehrer filed the Order which he promised would be forthcoming on April 15, 1987, which, *inter alia*, appointed Provident National Bank (hereinafter referred to as "Provident") as conservator; designated the law firm of Dilworth, Paxson, Kalish, and Kaufman (hereinafter referred to as "Dilworth, Paxson") as its counsel; directed that Dilworth, Paxson be compensated for its services by the Court; and instructed the attorneys involved to prepare a list of assets for a hearing on April 27, 1987. Accompanying the Order was an Opinion in which the C.P. Court held that the Church was a sham and that all of the property in its name in fact belonged to Heidnik, an issue which, as far as we can tell, none of the parties to either action in the C.P. Court asked the C.P. Court to address.

As it developed, none of the parties except Provident and its counsel, Dilworth, Paxson, were satisfied with the Opinion and Order. The first to act was Merrill Lynch, which, on April 23, 1987, removed both consolidated actions to our Court under Adversary No. 87–0375S.

Despite the Church's Bankruptcy filing on April 20, 1987, and this removal of the actions, and the contentions of counsel for both the Church and its Creditors' Committee voiced at the hearing on April 27, 1987, that the C.P. Court no longer had jurisdiction of the matter, Judge Lehrer nevertheless conducted the hearing as scheduled, and issued an Order directing Merrill Lynch to turn over all of the assets in the Church's securities account to Provident within seventy-two hours, or by April 30, 1987.

In the wake of this Order, paperwork began to fly into our Court from all directions on April 28, 1987. Heidnik filed a voluntary Chapter 11 Petition on his own behalf. The Creditors' Committee filed the Adversarial Proceeding before us at Adversary No. 87–0393S, seeking to enjoin the state court proceedings. And Provident filed Motions requesting that this court abstain from hearing the state court proceedings in both this Court and the District Court simultaneously, the latter of which was assigned to the Honorable Norma L. Shapiro as Misc. No. 87–204 in that Court.[1] We initially heard free-form arguments on all pertinent issues from all counsel who desired to be heard in the late afternoon of April 28, 1987, and Judge Shapiro agreed to join us for a joint hearing on the outstanding Motions at 8:30 A.M. on April 29, 1987.

At that hearing, Judge Shapiro indicated her intention to allow matters to initially proceed in this Court, which was followed by her Order of April 30, 1987, denying the Motion before that Court without prejudice.[2] We entered an Order, which, *inter alia*, granted the TRO insofar as it sought to stay all state court orders and proceedings and prevent any disposition of the assets held by Merrill Lynch; by agreement of the parties, directed Merrill Lynch to liquidate and retain the assets pending a further decision; directed the Debtors and the Creditors' Committee to file a Motion regarding the disposition of the estates' assets on or before May 4, 1987, in response to which the Motions for appointment of Trustees which are before us were filed; and scheduled a hearing on the Mo-

---

1. It was explained by Provident that the District Court filing was effected because the proposed Bankruptcy Rules, at Rule 5011, require bankruptcy judges to prepare a report and recommendation to the district court rather than deciding such a Motion, and that, in the interest of expediting the matter, the district court might opt to withdraw the reference of the matter to us. While the proposed Rule is not yet in effect and it is not clear that a withdrawal of reference is indicated under the proposed Rule, in any event, Judge Shapiro's presence in our Court and her ruling, described *infra*, squarely place the matter in our hands. *Accord: In re Convent Guardian Corp.*, 75 B.R. 346 and 75 B.R. 348 (Bankr.E.D.Pa.1987); *In re Watson-Mahaney, Inc.*, 70 B.R. 578, 582 (Bankr.N.D.Ill.1987); *In re Allied Mechanical & Plumbing Corp.*, 62 B.R. 873, 878 (Bankr.S.D.N.Y.1986); and *In re Elegant Concepts, Ltd.*, 61 B.R. 723, 727 (Bankr.E.D. N.Y.1986).

2. See page 274, n. 1 *supra*.

tion for a Preliminary Injunction and all other outstanding Motions, including Provident's Motion to abstain filed in our Court, concerning which we granted a request of Provident, which had been unaware of the removal at the time of the filing, to allow its Motion to be considered as a Motion to remand the cases to the C.P. Court.

On May 8, 1987, Counsel representing the Creditors' Committee, the Church, some of the victims, Provident, Merrill Lynch, Heidnik's wife and child, the Internal Revenue Service (hereinafter referred to as "IRS"),[3] the Commonwealth, the Veterans Administration and the Peace Corps, and the City all appeared. The parties agreed to submit the Motions on a Stipulation of Facts. Provident also sought to move into evidence an Affidavit of Judge Lehrer on the basis of Federal Rule of Evidence 803(24). Although we have serious doubt regarding the admissibility of any portion of this Affidavit into evidence in light of the multifarious objections thereto and do not encourage any similar efforts hereafter, we are admitting all but certain portions thereof (excepting all but the first sentence of paragraph six) because its admission into the record will not affect the outcome of our decision. At the end of the hearing, we also granted a Preliminary Injunction in roughly the terms of our TRO.

We would be remiss if we failed to comment positively upon the tremendous accomplishments of Judge Lehrer of the C.P. Court in devoting considerable thought, time, energy, and attention to this matter of extreme public interest, in the face of his other considerable duties. The C.P. Court proceedings are marked with his totally appropriate outrage at the nature of the crimes of which Heidnik is charged and what he believed was the sacrilegious hypocrisy of cloaking the financial support of such activities in the name of a church, strictly for purposes of tax evasion rather than for any cognizable religious motivation.

Nevertheless, as we have intoned in *In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1007, 1009–10 (Bankr.E.D.Pa. 1987); *In re Clark,* 69 B.R. 885, 889 (Bankr.E.D.Pa.1987); and *In re Stranahan Gear Co.,* 67 B.R. 834, 836–38 (Bankr.E.D. Pa.1986), the automatic stay arising from the Church's bankruptcy filing on April 20, 1987, is all-powerful and exempt from compromise. Its impact is to render not *voidable,* but *void,* any proceedings which take place, even innocently, in contravention to it. *See Clark, supra,* 69 B.R. at 890; and *Stranahan Gear,* 67 B.R. at 838. As the stay provides protection to creditors, by preventing preferences to certain creditors who would attempt to circumvent it, as well as to debtors, the stay applies whether invoked by a debtor or not. *See Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 447 (3d Cir.1982); and *Clark, supra,* 69 B.R. at 889. Moreover, the stay halts *all* actions against debtors at *any* level, be it in the state courts; federal district courts, *see Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 557 (1st Cir.1986); *Pope v. Manville Forest Products Corp.,* 778 F.2d 238, 239 (5th Cir.1985); and *NLT Computer Services Corp. v. Capital Computer Systems, Inc.,* 755 F.2d 1253, 1257–59 (6th Cir.1985); the Court of Appeals, *see Commerzanstalt, supra,* 790 F.2d at 207; and *St. Croix, supra,* 682 F.2d at 449; or even the Supreme Court of the United States. The reasons for this are that the bankruptcy case brings together the Debtor and all creditors in one forum where distribution can take place equitably, under the auspices of the Bankruptcy Code. This concept, which is perhaps the most fundamental of all to bankruptcy court jurisdiction, prevails over allegations, often true, that other courts have greater sensitivity or expertise than our court, and renders strict

---

**3.** The IRS moved orally that we grant it relief from the automatic stay in order that it could file a Motion to remove the Merrill Lynch action, in which its was named as a defendant, to the district court, pursuant to 28 U.S.C. § 1442(a)(1). Consistent with our ruling here that economy will be served by consolidating all of the proceedings in this jurisdiction and our concern that confusion would be created if we granted the IRS' Motion, we declined to do so.

and broad enforcement of the stay supreme.

██ Therefore, it is clear to us that the actions of the C.P. Court subsequent to 9:40 A.M. on April 20, 1987, were void. Further, it is absolutely no answer to argue that the Church is not bona fide and that Judge Lehrer may have been correct in his conclusion that it was a sham whose corporate veil is so transparent and offensive that it cries out for piercing. The fact is, at 9:40 A.M. on April 20, 1987, the C.P. Court Order and Opinion had not been filed and, as the Church's counsel aptly pointed out, the Church clearly had at least colorable title to the assets in its name beforehand, if not afterward as well. To hold otherwise would be to assume a certain disposition relating to the issue of ownership of the assets of the estate of the Church, which is precisely what one of our ultimate tasks would be in administering these Chapter 11 cases. Therefore, the fact that only the Church, and not Heidnik, had filed a bankruptcy case as of the date of the C.P. Order and Opinion of April 20, 1987, does not impact upon the fact that the Church's filing invalidates all orders concerning the Church's assets which were entered thereafter.

Hence, we have no choice but to declare the C.P. Court and Opinion, entered at 11:15 A.M. on April 20, 1987, void. Clearly, as even Provident's learned and assertive Counsel conceded, the Order of April 27, 1987, and any subsequent proceedings were void, because Merrill Lynch had removed the state court actions on April 23, 1987, and they were no longer within the jurisdiction of that court, in addition to the fact that they were stayed by reason of the presence of the automatic stay. We shall therefore continue our preliminary injunction as prayed for in Adversary No. 87–0393S, and indicate that we are disposed to promptly ripen this to a permanent injunction, thereby invalidating those actions and enjoining any further actions at this time by the C.P. Court on the proceedings before it at this juncture.

Given these conclusions, Counsel for the Church invites us to take the relatively small additional step of dismissing Provident's Motions for lack of standing, since Provident is in the case only due to its appointment as conservator by the strength of Orders of the C.P. Court which we have just held are unmistakably void. However, we shall not accept this invitation, for several reasons. First, ruling that Provident could not conceivably fulfill some role in this proceeding, like Provident's own assertion that the C.P. Court holding that the Church is a sham should influence our decision, assumes a conclusion of the disposition of the assets which excludes Provident, and this is a decision which we have not made and it is our ultimate task to make. Secondly, it is not clear that some of the parties who appeared at the May 8, 1987, hearing, and *do* unquestionably have standing, such as the Bureau of Child Support, did not join Provident in seeking the remand of the C.P. Court cases to that Court. Finally, we are most reluctant to decide issues placed before us on the ground that a party avidly expressing a legal position should not be allowed to do so on the basis of lack of standing. *See In re Young,* 70 B.R. 968, 970–71 (Bankr.E.D. Pa.1987); and *In re Morrison,* 69 B.R. 586, 588–90 (Bankr.E.D.Pa.1987). *Cf. In re McKeesport Steel Castings Co.,* 799 F.2d 91 (3d Cir.1986). Therefore, although recognizing that the standing of Provident is tenuous, in light of the unlikely marriage of Counsel for Heidnik and his Church on one hand and Counsel for the victims on the other in joining forces to oppose Provident's participation as an officious interloper, mostly on the basis of concern that Dilworth, Paxson will realize considerable fees if its participation, per the C.P. Court Orders, is permitted, we shall not rule against Provident on this basis, but instead assume *arguendo* that Provident has standing to raise the abstention/removal issue.

██ This assumption does not affect the outcome here, because we decline to abstain or remand these cases on the merits of the Motion urging us to do so. We believe that the Motion fails in its attempt to invoke either of the two prongs of 28

U.S.C. § 1334(c), which provides as follows, in what is the most basic of *core* proceedings:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing *a particular proceeding arising under title 11 or arising in or related to a case under title 11.*
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to a case under title 11 but not arising under title 11 or arising in a case under title 11,* with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy. (emphasis added).

The C.P. Court actions removed to our Court contemplate disposition of the fundamental bankruptcy-court duty of collecting and safeguarding the assets of the Debtors' estates. Such proceedings, we believe, satisfy *any* definition of core proceedings, as we believe these actions directly address "matters concerning the administration of estate," per 28 U.S.C. § 157(b)(2)(A). Nor is any sort of broad reading of

§ 157(b)(2)(A) necessary to bring these proceedings within its scope. *Compare In re Windsor Communications Group, Inc.,* 67 B.R. 692, 696 (Bankr.E.D.Pa.1986) (accounts receivable[4] actions by debtors are "core proceedings" within the scope of § 157(b)(2)(A), an issue regarding which we admit, unlike the C.P. Court actions here, presented a close question. See 67 B.R. at 700).

Like Collier, we read the language which we emphasized above in quoting 28 U.S.C. § 1334(c)(2), as referencing its application to a proceeding "related to a case under title 11 but not arising under title 11," as excluding the application of § 1334(c)(2) to proceedings which are clearly core proceedings. *See* 2 COLLIER ON BANKRUPTCY, ¶ 3.01, at 3–61, 3–62 (15th ed. 1986). Thus, Collier observes that "there will not be too many instances in which section 1334(c)(2) will be applied to suits filed by third parties against the debtor," like the instant proceedings, "[b]ecause the allowance and disallowance of claims are core proceedings." *Id.* at 3–62.

Several cases articulate this principal. *See, e.g., In re Corporacion de Servicios Medicos Hosp.,* 60 B.R. 920, 929 (D.P.R. 1986); *In re Harbour,* 60 B.R. 370, 371 (W.D.Va.1985); *In re Finley,* 62 B.R. 361, 367–68 (Bankr.N.D.Ga.1986); and *In re Blackman,* 55 B.R. 437, 445 (Bankr.D.D.C. 1985). Significant to the rulings in all of the cases cited by Provident are holdings that the proceedings which the bankruptcy courts decided not to hear or were precluded from hearing on the basis of § 1334(c) were either expressly held by be non-core, *see In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986); *In re World Financial Services Center, Inc.,* 64 B.R. 980, 987 (Bankr.S.D.Cal.1986); and *In re Baum-*

---

**4.** We should observe that we are *not* ruling that determination of the claims of the individual victims is in the same category of proceedings as the state court actions in issue, as 28 U.S.C. § 157(b)(2)(B) expressly provides that such proceedings are *not* core proceedings and that such personal injury actions must be tried elsewhere. *See* 28 U.S.C. § 157(b)(5).

Similarly, we are rendering no ruling that interferes in any respect with criminal proceedings against Heidnik, as the stay does not encompass same. *See* 11 U.S.C. § 362(b)(1). We do, however, note that the stay halts *all* collection actions gainst the Debtors, including any actions for support by Heidnik's wife and child, even though such obligations may be non-dischargeable pursuant to § 523(a)(5). *See In re Mack,* 46 B.R. 652, 657 n. 7 (Bankr.E.D.Pa.1985). However, a motion for relief from the stay to proceed in state court could be entertained by us regarding actions by either the victims or the wife and child.

*gartner,* 57 B.R. 517, 521 (Bankr.N.D.Ohio 1986), or held to be not even "related" to the bankruptcy case at hand. *See In re Bobroff,* 766 F.2d 797, 802–04 (3d Cir.1985); *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994–96 (3d Cir.1984); and *In re Newman,* 61 B.R. 27, 30 (Bankr.D.N.M.1986).

It is, of course, conceivable that resolution of the issues necessary to administer these estates will present difficult issues of state law. However, state law not only is the backdrop, but is pervasive in, most decisions which bankruptcy courts must make. Title 11 is certainly not the only law which we do and indeed must construe in making decisions, even in "core proceedings." As we pointed out in *Windsor, supra,* 67 B.R. at 697–98, almost every decision in allowance and disallowance of claims against the estate or counterclaims by the estate against claimants, which are specifically designated as "core proceedings," 28 U.S.C. §§ 157(b)(2)(B), (C), involve state law issues must be decided by us on a daily basis. In sum, we see no means of avoiding deciding state-law issues in determining core proceedings, and we believe that Congress directed us to determine all core proceedings, irrespective of what law we must apply to do so. Nor do we think that we should or must abstain solely because the state-law issues are unique or difficult.

In light of this disposition—that, since this is a core proceeding, 28 U.S.C. § 1334(c)(2) cannot be successfully invoked—we need not consider the six-part test set forth by Judge Fox in *In re Futura Industries, Inc.,* 69 B.R. 831, 834 (Bankr.E.D.Pa.1987), to determine whether mandatory abstention is appropriate.

We do, however, recognize that § 1334(c)(1), unlike § 1334(c)(2), *does* at least potentially apply to a "proceeding arising under title 11" as well as a "proceeding related to a case under title 11," and hence that we could remand this matter, in our discretion, under § 1334(c)(1). *See Harbour, supra,* 60 B.R. at 371; *Elegant Concepts, supra,* 61 B.R. at 727; and *In re Morris,* 55 B.R. 615 (Bankr.N.D.Tex. 1985) (by implication). However, we also

recognize, as Judge Fox observes in *Futura Industries, id.,* that there is but a "narrow sphere" of cases outside the strict confines of § 1334(c)(2) which bankruptcy courts, in their exercise of discretion, should abstain from hearing on the basis of § 1334(c)(1). We note that, in that case, Judge Fox abstained, because he justifiably doubted whether the state court action concerning which abstention was sought in issue was even "related" to the bankruptcy case. There, in issue was a state court action instituted only against individual officers of the debtor, to which action it did not even appear that the automatic stay was applicable.

Nothing in Judge Fox's Opinion even remotely suggests that a bankruptcy court could or should abstain from hearing a core proceeding in any but the most unusual situations. The unusual aspects of this matter are its underlying facts, not the ability of this bankruptcy court to grant relief as was sought in the C.P. Court proceedings which have been removed, which we discuss in the subsequent paragraph. We therefore believe that, however inviting it might be to return this entire matter to the state courts where it began, we cannot do so. Hence, we must deny Provident's Motion and make a determination in the removed cases.

■ An illustration of why this matter is a core proceeding arises from our disposition of the final aspect of our decision, in which we effectively do determine these actions. All that these actions sought was, in the *Thomas* case, a freezing of the Debtors' assets out of the control of Heidnik and, in the *Merrill Lynch* case, a disposition other than Merrill Lynch's having to return the assets in a legal limbo indefinitely. Our ultimate decision grants the relief sought in both actions.

In this aspect, we address the Church's Motion for single administration of its case and appointment of a Trustee, and the Motion of the Creditors' Committee to have these proceedings jointly administered and a common Trustee appointed for both cases. While we recognize that the appointment of a Trustee "is an extraordi-

nary remedy," 5 COLLIER ON BANK-RUPTCY, ¶ 1104.01[7][b], at 1104–19 (15th ed. 1986), we believe that we have before us a case where both prongs of § 1104(a), which addresses when a Trustee shall be appointed as follows, are applicable:

§ 1104. Appointment of trustee or examiner.

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

We have here the relatively rare case where § 1104(a)(2) is prevalent. All parties, including the Debtors and all of the creditors, agree that it is in the best interests of everyone and the public interest to place the assets of the estates of the Church and Heidnik out of the control of Heidnik. We agree. We could add that the C.P. Court findings, albeit that they are legally void, that Heidnik utilized the Church as a pawn in a gross and offensive fraudulent scheme to evade taxes may constitute "cause" under § 1104(a)(1) as well.

This leaves before us only to decide whether we shall order the cases to be jointly administered and appoint a single Trustee in both, or keep them separate and appoint a separate Trustee in each case. There is no question that, under Bankruptcy Rule 1015(c), we *could* order these cases jointly administered "to avoid unnecessary costs and delay." Economy is certainly one of our strongest concerns in administration of cases, as we indicated in *In re Grant Broadcasting of Philadelphia, Inc. (Third Opinion)*, 71 B.R. 655, 661–62 (Bankr.E.D.Pa.1987), where we refused to appoint two creditors' committees to minimize costs to the estates of inter-related debtors. The observations which we made in that *Grant* decision are, in one sense, particularly apt here, because the assets of the Debtors' estates, though sizable, are small relative to the potential claims against them and the apparent goal of most interested parties to compensate Heidnik's unfortunate victims. In fact, all of the parties opposing Provident's Motion expressed the most vigorous opposition to that aspect of the C.P. Court stating that compensation be paid to not only Provident, as conservator, but also to Dilworth, Paxson, as its counsel.

However, we must observe that there is not only a potential conflict between the estates of the Church and of Heidnik, but, in light of the C.P. Court Orders holding the Church a sham which, while void of legal significance, cannot be blotted out of existence, and raises a conflict which is clearly spread out on the C.P. Court record. In such a circumstance, we believe that we must deny the Motion of the Creditors' Committee, keep the administration of the estates separate, and appoint separate Trustees in each case.

We add that we are confident that the members of our present panel of Trustees chosen to act here will appreciate the necessity to preserve assets for the creditors, including the unfortunate victims of Heidnik, and minimize his and her own expenses, rather than taking the economization issue, figuratively speaking, out of the frying pan and placing it into the fire. We carefully supervise our panel members, all of whom are lawyers whom we carefully selected on a purely merit-selection basis in order that counsel is appointed only where absolutely needed, per the admonitions of the Court of Appeals in *In re Pioneer Sample Book Co.*, 374 F.2d 953, 960–61 (3d Cir.1967). *See In re Taylor*, 66 B.R. 390, 394–97 (Bankr.W.D.Pa.1986); and *In re*

*Bill Glass Bicycles, Inc.,* Bankr. No. 86–02947G (Bankr.E.D.Pa., Memorandum and Order filed May 4, 1987). We do not generally allow compensation to any counsel which we determine it is necessary for a Trustee to employ at any hourly rate greater than the moderate rate of $125.00 per hour. Although the particular Trustees chosen for this case were picked at random, as is our practice, we feel completely confident that any of these highly regarded officers of our Court would perform their tasks with the utmost economy to the estates, and we ourselves will then carefully review every task for which compensation is sought with complete power to allow or disallow same. In that way, we can assure the public that administration of this difficult matter is in the hands of a court which will act in the public interest.

An Order consistent with the conclusions set forth therein will be entered accompanying this Opinion.

### ORDER

AND NOW, this 12th day of May, 1987, based upon the record made at the hearing of May 8, 1987, and consistent with the foregoing Opinion, on the Motion for a Preliminary Injunction by the Plaintiff in Adversary No. 87–0393S (hereinafter "the P.I. Motion"); the Motion to Abstain and/or Remand filed by Provident National Bank (hereinafter referred to as "the Provident Motion"); a Motion by the Debtor in Case No. 87–01910S for Appointment of a Trustee (hereinafter referred to as "the Debtor's Motion") and a Motion by the Creditors' Committee for Joint Administration and Appointment of a Trustee (hereinafter referred to as "the Committee's Motion"), it is hereby ORDERED as follows:

1. The Provident Motion is DENIED.

2. The P.I. Motion is GRANTED, pending further Order of this Court. A permanent injunction will be issued upon Application by the Plaintiffs after the period for responsive pleading has expired. We hereby preliminarily enjoin Merrill Lynch, Provident, and Lisa Ann Thomas, and any other parties, or persons, or entities, including the Debtors, from taking any action to alter the status quo of the disposition of the assets and property of the estates of the Debtors and to continue or commence any judicial proceedings against the Debtors in any court other than this Court, pending further Order of this Court.

3. The Debtor's Motion is GRANTED, and Robert Szwajkos, Esquire, is appointed as Trustee in Case No. 87–01910S.

4. The Committee's Motion is GRANTED only insofar as it requests that a Trustee be appointed in Case No. 87–02045S, and Leslie B. Baskin, Esquire, is appointed Trustee in that case. In all other respects, this Motion is DENIED.

5. Merrill Lynch shall continue to hold the funds of the Debtors' estate in its possession until directed by Court Order, upon Motion by either of the respective Trustees of the Debtors' estates or any interested party, as to what further disposition of these funds is appropriate.