**In re GRANT BROADCASTING OF PHILADELPHIA, INC. (Jointly Administered With Grant Broadcasting System, Inc., Channel 33, Inc., Grant Broadcasting of Chicago, Inc., and Grant Broadcasting of Chicago Limited Partnership).**

Bankruptcy No. 86–05614S.
Civ. A. No. 87–1772.

United States District Court,
E.D. Pennsylvania.

June 24, 1987.

Jami Wintz McKeon, Philadelphia, Pa., for debtor.

Nathan B. Feinstein, Philadelphia, Pa., for Secured Noteholders.

Doron Henkin, Philadelphia, Pa., for Viacom Intern.

Mary F. Walrath, Philadelphia, Pa., for Unofficial Creditors Committee.

Howard Glassman, Philadelphia, for Creditors Committee.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is an appeal by the Secured Noteholders ("the Noteholders") of the Bankruptcy Court's Order dated March 3, 1987, which authorized the Debtors to use their cash collateral and denied the Noteholders' motion for relief from stay, 71 B.R. 376 (Bankr.E.D.Pa.1987). For the reasons stated herein, the Order of the Bankruptcy Court appealed from will be affirmed in all respects.

FACTS

On December 8, 1986, debtors Grant Broadcasting of Philadelphia, Inc., Grant Broadcasting of Chicago, Inc. and Channel 33, Inc. filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code. These three companies (collectively the "Subsidiary Debtors") are wholly-owned subsidiaries of Grant Broadcasting System, Inc. ("GBSI"), which filed a voluntary petition for reorganization under Chapter 11 on December 10, 1986. On January 27, 1987, Grant Broadcasting of Chicago Limited Partnership (the "Partnership"), of which Grant Broadcasting of Chicago, Inc. is general partner, also filed a petition for reorganization. The estates of the Debtors are being jointly administered pursuant to Orders of the Bankruptcy Court.

The Debtors are in the business of owning and operating three television stations: Channel 57 in Philadelphia, Pennsylvania, Channel 66 in Chicago, Illinois, and Channel 33 in Miami, Florida.

In 1986, GBSI issued certain so-called "junk" bonds for aggregate gross proceeds of approximately $80 million and granted to the holders of those bonds, the Noteholders, a security interest in the assets of GBSI. The Noteholders also assert a security interest in the assets of the three Subsidiary Debtors and the Partnership which, they contend, secure guarantees given by each of those entities with respect to the obligation of GBSI under the bonds.

The Debtors moved for authority to use their cash collateral assets and pre-petition bank accounts pursuant to 11 U.S.C. § 363. The Bankruptcy Court, in an Order dated December 12, 1986, and entered December 15, 1986, authorized the Debtors to use the cash collateral and pre-petition bank accounts until further hearing on December 19, 1986. On December 19, 1986, the Bankruptcy Court's "Stipulated Order Authorizing Debtors' Temporary Use of Cash and Accounts Receivable" was entered. That Order authorized the Debtors to use their cash collateral in the manner set out in the Order until further hearing before the Bankruptcy Court on January 9, 1987. On January 8, 1987, the Noteholders filed a motion for relief from stay, to transfer control of broadcast stations and for public judicial sale pursuant to 11 U.S.C. § 362. On January 9, 1987, the Bankruptcy Court entered another somewhat more permanent "Stipulated Order Authorizing Debtors' Temporary Use of Cash and Accounts Receivable." That Order remained in force, until further Order of the court, by virtue of the Bankruptcy Court Order entered on February 4, 1987. The Debtors' § 363 motion for authority to use cash collateral and the Noteholders' § 362 motion for relief from stay were consolidated and hearings were held before the Bankruptcy Court on January 9, January 23, January 26, January 30, February 2, and February 3, 1987. On March 2, 1987, the Bankruptcy Court entered an Opinion and Order granting, with certain conditions, the Debtors' § 363 motion for authority to use cash collateral and denied the Noteholders' § 362 motion for relief from the automatic stay.

That Order also provides, in sum and substance, the conditions that:

1. Cash collateral be used only to fund necessary operating expenses of the three stations;

2. Mr. Harold Christiansen (the Noteholders' designee) continue to have access to Debtors' management and financial information;

3. Debtors pay all on-going tax liabilities;

4. The Noteholders receive a super priority lien of the type described in 11 U.S.C. § 364(c)(1) to the extent, if any, that the use of cash collateral results in a dimunition of the Noteholders' interest;

5. Debtors file a plan of reorganization by June 26, 1987;

6. Debtors comply with the cash flow projections and programming reductions testified to at the hearings; and

7. The rights or obligations provided for in the Order be effective only until July 1, 1987, at which time the Court will consider whether to grant continued use of cash collateral.[1]

In support of its March 2, 1987 Order, the Bankruptcy Court issued a 33–page Opinion containing 39 detailed findings of fact and 6 conclusions of law. That March 2, 1987 Order is the subject of the instant appeal.

After reading the parties' principal briefs and the appellants' reply brief, this court heard the oral arguments of the parties on June 3, 1987.

DISCUSSION

██ The court has appellate jurisdiction over this appeal under 28 U.S.C. § 158(a). The applicable standard of review is as follows: "Findings of fact shall not be set aside unless cleaerly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Rules Bankr.Proc., Rule 8013. Thus the findings of a bankruptcy judge must be given the same weight that is given to the findings of a district judge under Federal Rule of Civil Procedure 52. Review of questions of law is plenary. *Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986).

Although the two consolidated motions that were decided by the March 2, 1987 Order were made pursuant to two distinct Bankruptcy Code sections, §§ 362 and 363, the issues decided by that Order and to be decided now on appeal are common to both motions. The Debtors' motion for permission to use cash collateral was made pursuant to 11 U.S.C. § 363(c)(1), (c)(2)(B) and (e) which provide as follows:

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

\* \* \* \* \* \*

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section. . . .

\* \* \* \* \* \*

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

The Secured Noteholders' motion for relief from automatic stay was made pursuant to 11 U.S.C. § 362(d), which provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

---

1. The March 2, 1987 Order also restrained the Debtors from using cash collateral to pay any salary to Milton Grant, president of the Grant Companies. That restriction was modified by the Bankruptcy Court's later Order of March 13, 1987, authorizing payment of Mr. Grant's salary in the amount of $125,000.00 per year, plus expenses. The March 13, 1987 Order is the subject of two consolidated appeals, Civil Action Nos. 87–2140 and 87–2194, which will be heard by this court at a later date.

terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

In order to decide the two motions, the Bankruptcy Court had to determine whether the Noteholders' interests were adequately protected. Thus, the disposition of this appeal turns on the proper interpretation and application of the "adequate protection" requirement. If the interests of the Noteholders were not adequately protected, then § 363(e) would prohibit the Debtors from using cash collateral unless, pursuant to § 363(c)(2)(A), the Noteholders consented thereto, which they certainly did not. Additionally, if the Noteholders' interests were not adequately protected, they would have been able to obtain relief from the automatic stay to pursue whatever contractual state law remedies exist, including recovery of their collateral, pursuant to 11 U.S.C. § 362(d)(1).

Sections 362 and 363 are preceded by 11 U.S.C. § 361, which provides as follows:

Sec. 361. Adequate protection.

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Both section 362 and 363 have provisions which address the subject of the burden of proof of the competing parties in motions under these respective sections, as follows:

§ 362

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

§ 363

(o) In any hearing under this section—

(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

■ Since the Bankruptcy Court Opinion, which accompanied the Order at issue here, correctly analyzed the burdens of proof that each of the parties had with respect to the two motions, the court adopts that analysis which is as follows:

Taking these two sections together, it can be concluded that, in a § 363(c)(2) hearing, the Debtor has the burden of proof on all issues except the validity, priority, and extent of the alleged secured party's security interest, including all other component elements relevant to the "issue of adequate protection." In a § 362(d) hearing, the debtor has the burden of proof on all issues except the issue of his equity in the property.

In *In re Stranahan Gear Co.*, 67 B.R. 834, 836–38 (Bankr.E.D.Pa.1986), we addressed the issue of burden of proof per §§ 362(d), (g) and concluded that, despite the language of § 362(g)(2), the moving

creditor has an initial burden of showing prima facie "cause" for relief before any burden attaches to the Debtor.

In analysis of § 363(*o*), we would be inclined to allocate the burdens in a different fashion than we did in analyzing § 362(g). In invoking § 363, the debtor is seeking to alter the status quo that he cannot utilize cash collateral, whereas, in a § 362(d) hearing, it is the creditor who is seeking to alter the status quo of the sweeping protection of the debtor by the automatic stay.

The upshot of the foregoing is our conclusion that the burden of the Debtor is stiffer on a § 363 Motion than it is in withstanding the Motion of a creditor on a § 362 Motion. Thus, if the Debtor is able to satisfy us that the creditor is adequately protected for purposes of § 363(c)(2), then it seems to us that, at least as to that creditor, he will satisfy us as to § 362(d) also. Hence, *if we conclude that the Debtors here have met their necessary burdens per § 363(c)(2), they will be found to have met them for purposes of § 362(d)(1) as well.*

*In re Grant Broadcasting of Phila., Inc.,* 71 B.R. 376, 385 (Bankr.E.D.Pa., 1987) (emphasis added).

■ Before reaching the question of whether the Noteholders' interests were adequately protected, the Bankruptcy Court had to identify the nature of those interests. The Debtors had the burden of establishing that the Noteholders' interests were adequately protected, and the Noteholders had the burden of proof of establishing the nature of their interests. On the limited record before it and for the purposes of deciding the two motions before it, the Bankruptcy Court concluded that the Noteholders met their burden of showing the priority and the validity of their liens to the extent of $90,530,174.00, and that their liens are extended to interest at the pre-default rates stated therein which they established would amount to $5 million per annum. The Bankruptcy Court found that the Noteholders had not met their burden of establishing that their security interests extend to a right to post-default interest, which would accrue at the rate of approximately $15 million per annum. This was because the Noteholders never declared a default by the Debtors as required by Section 3.03 of the securities. The Noteholders did not declare a default before the Debtors filed their bankruptcy petitions and the automatic stay has been in place to prevent them from doing so post-petition. The Bankruptcy Court therefore correctly held that the Noteholders' interests would accrue, at that point, at the rate of $5 million per annum.

■ In reviewing the decision of the Bankruptcy Court, this court can only consider the facts that were before that court and not the current financial condition of the Debtors.

■ The Noteholders argue that in order for the Debtors to meet their burden of proving that the Noteholders' interests are adequately protected, the Debtors must have met either § 361(1), (2) or (3). The Debtors answer that argument by asserting that § 361 is not mandatory but, instead, the three subsections of § 361 are just a short and inexhaustive list of some examples of adequate protection. Thus, they maintain that adequate protection can exist even if none of the three subsections of § 361 are met. To support this argument Debtors point out that the second line of § 361 states that "... such adequate protection *may* be provided by— ..." 11 U.S.C. § 361 (emphasis added). Debtors contend that if one of the three subsections had to be satisfied, the language of § 361 would have been "shall" rather than "may."

Debtors admit that they have not met § 361(1) or (2), and their position as to whether or not they met § 361(3) is unclear. Instead, they assert that they have met their burden of establishing that the Noteholders' security interest was adequately protected since the existence of a sufficient equity cushion alone should satisfy that requirement. *See, e.g., In re O'Connor,* 808 F.2d 1393 (10th Cir.1987); *In re Mellor,* 734 F.2d 1396 (9th Cir.1984); 2 *Collier on Bankruptcy* ¶ 361.01[1] (15th

ed. 1987). They do not, however, rely solely on the existence of a sufficient equity cushion. In addition to the equity cushion, the Debtors cite the several additional conditions that were imposed on them by the March 2, 1987 Bankruptcy Court Order for the benefit of the Noteholders and other creditors. In summary form those conditions are that:

1. Cash collateral be used only to fund necessary operating expenses of the three stations;

2. Mr. Harold Christiansen [the Noteholders' designee] continue to have access to Debtors' management and financial information;

3. Debtors pay all on-going tax liabilities;

4. The Noteholders receive a super priority lien of the type described in 11 U.S.C. § 364(c)(1) to the extent, if any, that the use of cash collateral results in a dimunition of the Noteholders' interest;

5. Debtors file a plan of reorganization by June 26, 1987;

6. Debtors comply with the cash flow projections and programming reductions testified to at the hearings; and

7. The rights or obligations provided for in the Order be effective only until July 1, 1987, at which time the Court will consider whether to grant continued use of cash collateral.

*In re Grant Broadcasting of Phila., Inc.,* 71 B.R. 376, 377–78 (Bankr.E.D.Pa.1987).

An equity cushion is a "surplus of value remaining after the amount of indebtedness is subtracted from the fair market value of the collateral." *Commonwealth of Pa. State Employees Retirement Fund v. Roane,* 14 B.R. 542, 545 (E.D.Pa.1981). In this case the equity cushion is the balance remaining after subtracting the amount of the Noteholders' security interests at the time of the Bankruptcy Court's decision was made from the fair market value of Debtors' television stations at that same time. As the Bankruptcy Court noted, "[t]here appears to be no dispute among the parties that an 'equity cushion' if sufficient in size and unlikelihood of erosion may constitute, in itself, adequate protection." *Id.* 71 B.R. at 386; *see also, In re Mellor, supra,* 734 F.2d at 1400; *Commonwealth of Pa. State Employees Retirement Fund v. Roane, supra,* 14 B.R. at 544–45; *In re Liona Corp.,* 68 B.R. 761, 767 (Bankr.E.D.Pa.1987); *In re Curtis,* 9 B.R. 110, 112 (Bankr.E.D.Pa.1981). The dispute among the parties before the Bankruptcy Court was whether such an equity cushion existed. The Bankruptcy Court found that an equity cushion of approximately $25 million existed based upon its factual finding that Debtors' television stations had a fair market value of about $115.5 million and that the Noteholders' security interests were only in the amount of approximately $90.5 million. In arriving at this finding, the Bankruptcy Court accepted the valuation conclusion of Debtors' expert witness, Bruce Cheen, and rejected the valuation conclusion of the Noteholders' expert witness, Anthony Hoffman. One of the reasons for this finding was because the Debtors' expert used a valuation method, the "multiple of cash flow method," which *both* parties' experts agreed was the most frequently used in the broadcast industry to determine the value of stations. That method involves the calculation of present market value through the summation of discounted projected cash flow streams over a ten-year period. Whereas, the Noteholders' expert utilized the "comparable sales method" which relied on data from sales of only ten (10) allegedly comparable stations between May, 1983 and April, 1985. The Bankruptcy Court found that the methodology utilized by Mr. Hoffman was not the method regularly used in the industry. Additionally, the court was not convinced that the allegedly comparable stations selected by Mr. Hoffman supplied sufficient and recent enough data to establish that his estimates were valid even if his chosen method was the proper method to be used. Another reason why the Bankruptcy Court accepted Mr. Cheen's valuation conclusion over Mr. Hoffman's conclusion was because in reaching that conclusion Mr. Cheen was operating under an assumption which was most likely to transpire: that Debtors

would reduce programming costs by twenty-five percent (25%).

The court finds that the Bankruptcy Court was correct in finding that Debtors met their burden of proving that the Noteholders' security interest was adequately protected. Accordingly, the Bankruptcy Court Order of March 2, 1987, will be affirmed.

An appropriate Order will be entered.