In re Sheldon GURST, Debtor.

PHILADELPHIA CONSUMER
DISCOUNT COMPANY,
Plaintiff,

v.

Sheldon GURST, Margot Gurst, Harvey
Gurst, Kimberly Gurst, Defendants.

Sheldon GURST, Plaintiff,

v.

PHILADELPHIA CONSUMER
DISCOUNT COMPANY,
Defendant.

Bankruptcy No. 86–04726K.
Adv. Nos. 86–1150K, 87–0277S.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 30, 1987.

576

Irwin Trauss, Philadelphia, Pa., for debtor.

Martin N. Ghen, Doylestown, Pa., for Philadelphia Consumer Discount Co.

Edward Sparkman, Philadelphia, Pa., trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Presently before us in the instant bankruptcy case, and one of the above-captioned related adversarial proceedings are the following: (1) A Motion for Relief from the automatic stay (hereinafter referred to as "the Stay Motion") filed on February 4, 1987, by Philadelphia Consumer Discount Company (hereinafter referred to as "the Creditor") in the main case, in order that it can proceed to litigate two mortgage foreclosure actions instituted by it against the Debtor in the Court of Common Pleas of Philadelphia County at July Term, 1983, No. 4533 (hereinafter referred to as "the 1983 action"), and at January Term, 1986, No. 3870 (hereinafter referred to as "the 1986 action"); and (2) A Motion filed by the Creditor on March 3, 1987, to remand the 1983 action to the state court (hereinafter referred to as "the Remand Motion"), from which the Debtor removed it in one of the adversarial proceedings, Adversary No. 86–1150K, on October 10, 1986.

This removal was effected the day after the Debtor filed this Chapter 13 case on October 9, 1986. We should also note the presence of the other above-captioned adversarial proceeding between the parties, at Adversary No. 87–0277S, in which the Debtor, on March 20, 1987, filed a Complaint objecting to the Proofs of Claim filed by the Lender on each of the mortgages which underlie the respective foreclosure actions (This action is referred to hereinafter as "the Debtor's Complaint"). The procedural status of the Debtor's Complaint, which we hold is highly relevant to our ultimate disposition here, is set forth in an Order of May 7, 1987, in which we directed the parties to attempt to formulate a Stipulation of Facts on or before July 2, 1987, or to try the matter on July 8, 1987.

It would also unduly simplify the matter if we failed to observe that also pending in our Court is a separate bankruptcy filed by the Debtor's wife Margot (hereinafter referred to as "Margot"), at Bankr. No. 85–00480K. We previously issued a published Opinion in Margot's case in granting an Objection of the Lender to a Proof of Claim, filed by Margot regarding the obligations secured by the mortgages underlying the same state court foreclosure actions mentioned at page 2 *supra*,[1] in the amount of one ($.01) cent, on the grounds that the Proof of Claim was not timely filed. *In re Gurst*, 70 B.R. 467 (Bankr. E.D.Pa.1987), *appeal docketed*, C.A. No. 87–2065 (E.D.Pa.). There, we observed that the Lender, "argues, not without some logical support, that the general strategy of the Debtors is to whipsaw the Creditor by manipulation of two (2) simultaneously-pending bankruptcies."[2] *Id.* at 467. A Memorandum Opinion in Margot's case, denying Objections to Confirmation of her Plan by the Creditor, but determining that certain aspects of the proposed Plan must be resolved before we can confirm it, is filed this day. It is totally amazing to us how much paperwork and time of this

1. Margot is also a party to each of the foreclosure actions. Also parties to the 1983 action are Harvey Gurst and Kimberly Gurst, apparently the son and daughter-in-law of the Debtor and Margot.

2. Our observation was supported by the fact that the instant Debtor had originally filed another case, Bankr. No. 84–03693G, on October 23, 1984, which was dismissed on January 15, 1985. Margot then filed her case on February 8, 1985. After the Lender obtained relief from the automatic stay on July 25, 1985, as to Margot, and trial of the foreclosure actions was apparently imminent in state court, the Debtor then filed this action on October 9, 1986. *See In re Gurst, supra,* 70 B.R. at 467–68 at n. 1.

As we observe herein, it would seem that the Debtors could easily have brought the underlying issues, which are set forth in the Debtor's Complaint, to a head in some forum before this time, and thereby avoided the great volume of labor which both counsel and the Court have had to invest in both *Gurst* matters in getting to this point.

Court both of these parties have expended on Mr. and Mrs. Gurst.[3]

It is our observation that both of these Motions are intrinsically wedded not only to each other, but also to the as-yet-unresolved Debtor's Complaint, and it is the resolution of the latter which we believe must occur first if the present procedural logjam is to be dissolved.

■ The resolution of the Remand Motion, the principles pertinent to which we discussed at some length in our recent decision in *In re United Church of the Ministers of God*, 74 B.R. 271, 276–278 (Bankr. E.D.Pa.1987), in all probability will depend on the resolution of the Stay Motion. If the Lender is not going to be permitted to maintain the foreclosure action against the Debtor in state court by reason of the automatic stay, it makes no practical sense to remand the 1983 foreclosure action. As the Court observes in *Pursifull v. Eakin*, 814 F.2d 1501, 1505 (10th Cir.1987), "[e]ven where the court has abstained pursuant to § 1334(c), the stay granted under § 362 must be modified in order to allow the resolution of claims other than in the court with jurisdiction over the bankruptcy." While the state court action could conceivably proceed against only Margot and the co-defendants, it could not proceed against the Debtor unless the Creditor obtains relief from the stay. If the Creditor sought to proceed against the three co-defendants other than the Debtor, there would then be pending both the Debtor's complaint and the 1983 state court action, in which both the state courts and we would be simultaneous litigating virtually the same case. Although we are skeptical of the Debtor's purported concern about judicial economy in light of his counsel's ingenious capacity to make many legal actions out of what could have been two foreclosure actions tried together in the state courts or one

action tried here at any time over the past three years, we must observe that, having come to this point, we cannot see how it is helpful to anyone, including the judiciary, to have two actions pending simultaneously in two different forums which involve identical factual and legal issues.

We also should note that we have some doubts as to whether a remand pursuant to 28 U.S.C. § 1334(c) would be appropriate in any event. If, as the Debtor argues, the validity of the Lender's mortgage can be attacked, then the foreclosure action takes the form of a proceeding involving "allowance or disallowance of claims" or the "determination ... of the validity, [or] extent, ... of liens," within the scope of 28 U.S.C. §§ 157(b)(2)(B) and (K). A foreclosure would clearly "affect ... the liquidation of assets of the estate" or "adjustment of the debtor-creditor ... relationship, ... per 28 U.S.C. § 157(b)(2)(O). Thus, particularly if the contentions of the Debtor are sustained, it would appear that the foreclosure action is properly characterized as a "core proceeding." If the matter sought to be remanded is a "core proceeding," then 28 U.S.C. § 1334(c)(2) is not applicable. *See United Church, supra*, at 277. In any event, we question whether the following requisite elements for a § 1334(c)(2) are present: (1) a timely filing of the Remand Motion, as it was filed almost five months after the removal; (2) that the proceeding, raising issues under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"), is based upon state law; and (3) that the prospect of timely adjudication in the short-handed Philadelphia Common Pleas Court forum has been established. *See In re Futura Industries, Inc.*, 69 B.R. 831, 834 (items (1), (2) and (6)) (Bankr.E.D.Pa.1987).

There is, of course, also a "narrow sphere" of cases in which the bankruptcy court, in its discretion, can abstain in the interest of justice or of comity with the

---

**3.** As we observe at page 579 and note 4, *infra*, we believe that resolution of merits of the purported rescission of the mortgage transactions, presented in Adv. No. 87–0277S, will end this waste of resources. It is almost as if neither counsel is prepared to face a resolution of these issues, and thus have become involved in a procedural dance around their resolution. Our intention, speaking figuratively, is to decide Adv. No. 87–0277S on its merits and stop the music.

state courts pursuant to 28 U.S.C. § 1334(c)(1). *See United Church, supra,* at 278; and *Futura Industries, supra,* 69 B.R. at 834. However, again, if the Lender is not successful in the Stay Motion, there would be no state court proceeding against the Debtor to which we could abstain or to which we could defer in the interest of comity.

Therefore, we must decide the Stay Motion before we decide the Remand Motion, because the decision in the Stay Motion may significantly impact upon the result on the Remand Motion. However, we further observe that the Stay Motion cannot be definitively resolved until we resolve the Debtor's Complaint.

The Lender suggests that, essentially, two factors entitle it to relief from the stay at this juncture: (1) The Debtor's premises, upon which the Lender seeks to foreclose, is owned by the Debtor and Margot by the entireties, and hence is purportedly not property of his estate which he can affect through his reorganization; and (2) Neither he nor any of the co-obligors have made any payments on either underlying mortgage obligation for over three years, and this substantial non-payment *ipso facto* justifies relief from the stay.

■ Regarding the first point, we cannot agree that property which the Debtor co-owns by the entireties is not within the exceedingly broad scope of "property of the estate" of the Debtor. *See* 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515; and *In re Mason,* 69 B.R. 876, 882–83 (Bankr.E.D.Pa.1987). Community property is expressly included within the scope of the term. 11 U.S.C. § 541(a)(2). Regarding property held by the entireties, this Court has repeatedly held that it is the *entire* value of such property which must be considered in determining the value of the Debtor's interest in such property. *See In re Jablonski,* 70 B.R. 381, 387–88 (Bankr.E.D.Pa.1987); and

*In re Panas,* 68 B.R. 421, 422–24 (Bankr.E.D.Pa.1986). Thus, the filing of a bankruptcy in no sense severs or disassociates this property from the Debtor's estate. There is no question in our mind, then, that the status of the premises on which the Lender seeks to foreclose, being property co-held by the Debtor by the entireties, is property of the estate, and the fact that the Debtor's home is co-owned does not in any way enhance the Lender's efforts to obtain relief from the automatic stay.

On the issue of failure to make payments, the Lender cites to another decision involving the *Panas* debtor, *In re Panas,* 63 B.R. 637 (Bankr.E.D.Pa.1986).[4] There, the Debtor attempted to present evidence of value and repairs to the property which the Court both refused to admit and further stated that, had it admitted such evidence, the Court "would have accorded it very low credibility." 63 B.R. at 638.

On the other hand, here, the parties stipulated that the Debtor and Margot have in excess of $30,000.00 equity in their home and the Debtor's Complaint alleges substantial claims that the mortgage obligations in issue were validly rescinded, which, if sustained, would eliminate entirely the Lender's status as a secured creditor. *See In re Tucker, Tucker v. Mid-Penn Consumer Discount Co.,* 74 B.R. 923, 932 (Bankr.E.D.Pa.1987).

We have repeatedly held that a Debtor's failure to make payments to even a creditor which indisputably is secured, while definitely *a* factor in determining whether a § 362(d) motion should be granted, is not the only factor to be considered. *See In re Crompton,* 73 B.R. 800, 809–10 (Bankr.E.D.Pa.1987); *In re Tashjian,* 72 B.R. 968, 973 (Bankr.E.D.Pa.1987); and *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 376, 386–89 (Bankr.E.D.Pa.1987), *aff'd,* 75 B.R. 819 (E.D.Pa.1987).

---

**4.** It can be observed that Mr. Panas' status as co-owner of entireties' property was not in any sense a negative factor in the decision on the creditor's motion for relief from the stay in that case, supporting the conclusion that Judge Goldhaber would concur with our observation in response to the Creditor's first argument.

■ Here, we are compelled to observe that, in additional to validly asserting that he has a large equity cushion, the Debtor is asserting a defense of rescission which, if sustained, would wipe out the Lender's secured status. Such a defense, which " 'strikes at the very heart' of the validity of the Movant's secured claim," clearly can be asserted in response to a Stay Motion. *In re Souders,* 75 B.R. 427, 432 (Bankr. E.D.Pa.1987) (quoting *In re Pappas,* 55 B.R. 658, 661 (Bankr.D.Mass.1985); and *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 185 (Bankr.N.D.Fla. 1980)). As we pointed out in *Souders,* reducing a movant in a § 362(d) to unsecured status is almost certainly fatal to such a Motion. *See Souders, supra,* at 440; *In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1009–10 (Bankr.E.D.Pa.1987), *appeal dismissed,* C.A. No. 87–2364 (E.D. Pa., Order filed June 25, 1987); and *In re Stranahan Gear Co.,* 67 B.R. 834, 837–38 (Bankr.E.D.Pa.1986).

■ The merits of the contentions of the Debtor that he has validly rescinded the obligations in issue, thus voiding the mortgages, are the centerpiece of the Debtor's Complaint. Therefore, until that Complaint is resolved, we believe that it would be precipitous to grant the Stay Motion. We shall therefore defer disposition of the Stay Motion, and the Remand Motion in turn, pending disposition of the Debtor's Complaint. This being so, prompt disposition of the Debtor's Complaint is crucial.

We therefore urge the parties to cooperate in either making good faith efforts to settle these matters, which are exhausting both the parties and the Court far beyond the degree of their actual substantive complexity,[5] or, if they are unable to do so, in presenting the merits of the Debtor's Complaint to us quickly and concisely, because we shall not rule with finality on the Stay Motion until the Debtor's Complaint is re-solved. And, because the resolution of the Stay Motion is very pertinent to the Remand Motion, we shall also not rule with finality on that Motion at this time either. Rather, we shall enter the accompanying Order, continuing the automatic stay in place, but deferring final disposition on both of these Motions until after the Debtor's Complaint is resolved. Also, we are entering an Order relevant to the Debtor's Complaint requiring the parties to file Briefs on what appear to be issues of solely application of the TiLA and inter-related state law to undisputed facts therein on or before July 24, 1987, thus permitting us to decide the merits of the Debtor's Complaint as quickly as the parties will allow us to do so.

### ORDER

AND NOW, this 30th day of June, 1987, upon consideration of the Stipulation of Facts and the Briefs of the parties in reference to the Motions of PHILADELPHIA CONSUMER DISCOUNT COMPANY (hereinafter referred to as "the Creditor") for relief from the automatic stay and to remand the matter in the Philadelphia Court of Common Pleas, at July Term, 1983, No. 4533, removed by the Debtor to this Court in Adversary No. 86–1150K above-captioned, it is hereby ORDERED as follows:

1. Decision on both Motions shall be deferred pending disposition of Adversary No. 87–0277S.

2. The automatic stay arising from the Debtor's bankruptcy filing, per 11 U.S.C. § 362(a), shall remain in full force and effect pending disposition of Adversary No. 87–0277S.

3. Disposition of Adversary No. 87–0277S shall proceed as per our Order of May 7, 1987, which shall remain in full force and effect. However, in addition, the parties are directed to simultaneously file and serve Briefs in support of their respec-

---

5. Resolution of all of these matters, and most of the procedural gyrations in Margot's case, revolve around determining whether, under the TILA, the Debtor (and Margot) validly rescinded these transactions and what the impact of such recession, if valid, will be. We can only hope that our decision in *Tucker, supra,* where we dealt with TILA issues which were, if anything, more complex than those presented here, will serve as guidance to both parties.

tive positions in this matter on or before July 24, 1987.

4. No requests for continuance of the scheduling in Adversary No. 87–0277S will be allowed.

5. The original copy of the Briefs shall be filed with the Clerk of this Court and copies shall be served upon opposing counsel and delivered to the Court in chambers, on or before 4:00 P.M. on July 24, 1987.