Beneficial Consumer Discount Company, a Pennsylvania Corporation, Petitioner *v.* William E. Whitesell, Secretary of Banking, Commonwealth of Pennsylvania, Respondent; Signal Consumer Discount Company, Intervenor.

Argued May 8, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and MacPhail. Judges DiSalle and Craig did not participate.

*Paul A. Manion,* with him *George H. Valentine,* and *Reed, Smith, Shaw & McClay,* and, of counsel, *Christopher Zettlemoyer,* for petitioner.

*Bonnie Jean McRobbie,* Assistant Attorney General, with her *John E. Nanorta,* Assistant Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

*John J. McLean, Jr.,* with him *James R. Sweeny, Melvin L. Moser, Jr.,* and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for intervenor.

OPINION BY JUDGE BLATT, August 17, 1979:

The Beneficial Consumer Discount Company (petitioner) initiated this action within our original jurisdiction, seeking review of certain regulations promulgated by the Secretary of Banking (Secretary), under Section 12 of the Consumer Discount Company Act,[1] (Act), 7 P.S. §6212. The Signal Consumer Discount Company was later granted permission to intervene as a party-respondent. The parties have cross-filed motions for summary judgment with supporting affidavits, and, there being no material factual dispute, we shall proceed to resolve the legal issues presented. Essentially, we must determine whether or not the Secretary's regulations contravene the provisions of the Act.

Section 14A of the Act, 7 P.S. §6214A, provides as follows:

A licensee shall not permit any person to become obligated to such licensee as a consumer on one or more loan contracts for an aggregate amount in excess of five thousand dollars ($5,-000), exclusive of charges authorized by this

---

[1] Act of April 8, 1937, P.L. 262, *as amended,* 7 P.S. §6201 et seq.

act. . . . This limitation shall not impair the authority of a licensee to lend money, credit, goods or things in action, or to purchase contracts in amounts in excess of five thousand dollars ($5,000) and charge, contract for, receive or collect interest or discount at the legal rate established by the General Usury Statute of the Commonwealth.

In 1978, pursuant to his authority to issue regulations under Section 12 of the Act, 7 P.S. §6212,[2] the Secretary promulgated the following regulation interpreting the above-quoted Section 14A of the Act:

(p) When a loan in excess of $5,000 is granted to one consumer or when an aggregate number of loans are granted to one consumer by a licensee or licensees under the same management or control the total of which exceed $5,000, the interest rate on the amount in excess of $5,000 shall be limited to the legal rate established by the Act of January 30, 1974 (P.L. 13, No. 6) (41 P.S. §202), which rate is 6% per annum, simple interest. This means that a licensee may grant a single loan in excess of $5,000 at the rate provided in the Act and on the portion . . . thereof in excess of $5,000 at 6% per annum simple interest. . . .

8 Pa. B. 1753.[3] The petitioner argues here that this regulation is inconsistent with Section 14A, which, it contends, requires that loans in excess of $5,000 be

---

[2] Section 12 of the Act, 7 P.S. §6212, authorizes the Secretary to:

issue such general rules and regulations as may be necessary for the protection of the public, for insuring the proper conduct of business contemplated by the act, and for the enforcement of this Act, which rules and regulations shall have the force and effect of law.

[3] This regulation now appears, in modified form, at 10 Pa. Code §41.3(p).

made at 6 percent (the legal rate) on the entire amount, rather than at 6 percent on the amount in excess of $5,000. In support of this position, the petitioner argues that (1) the statutory section in question is unambiguous and susceptible only to its interpretation, (2) that the regulation is contrary to a previously announced interpretation of the statute by the Secretary, and that (3) the regulation offends the public policy on the basis of which the Act was adopted.

We cannot agree with the petitioner that Section 14A of the Act is unambiguous. On the contrary, we believe that it is just as reasonably susceptible to the construction advanced by the Secretary as it is to that asserted by the petitioner. We must conclude, therefore, that it is ambiguous and look to the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(c), where the legislature has suggested a number of considerations in construing a statute when its words are not explicit. Those considerations most pertinent here, we believe, are the administrative interpretation of the statute, the consequence of a particular interpretation, and the object to be attained by the legislation.

In an area as complex as banking and finance, we are inclined to accord deference to the interpretation of the department because of its regulatory expertise and enforcement experience. In addition, we think that the consequences. of adopting one interpretation as opposed to another militate in favor of the Secretary's construction. The petitioner's interpretation would effectively limit to $5,000 the amount which consumer discount companies could lend because no institution would lend more if it could charge only 6 percent on the entire amount. As a result, anyone desiring to borrow more than $5,000 would have to obtain more than one loan from more than one com-

pany, paying the full consumer discount rate (up to 24 percent) on each. We are informed by affidavit, in fact, that this was a common practice before the promulgation of the regulation in question.[4] As to this practice, the Secretary observes:[5]

> Although the practice of having multiple loans from several consumer discount companies at the highest rate is perfectly permissible under the statute, it was clearly not in the best interests of the consuming public to limit the borrower who required more than $5,000 to this highly priced alternative. As an additional disadvantage, the borrower was required to face the inconvenience of going from the office of one licensee to the office of another licensee to satisfy his financing needs, multiple payment books, different monthly payment mailings and different loan offices to contact in the event of repayment problems. Economic inefficiency is also attendant upon such a practice since a certain fixed cost is incurred in making a loan regardless of the amount lent. It costs more, perhaps twice as much, to make two loans of $5,000 each than it costs to make one loan of $10,000.

The result of the Secretary's interpretation, on the other hand, has been positive:[6]

> Our experience with the 'split rate' loan policy has been favorable: it makes more credit available at less cost, better suits the borrowing needs of the public and tends to increase competition among CDCA [Consumer Discount

---

[4] Affidavit of T. D. Provance, Senior Vice President, Signal Consumer Discount Company.

[5] Affidavit of William E. Whitesell, (former) Secretary of Banking, Commonwealth of Pennsylvania.

[6] Whitesell, note 5, *supra*.

Act] licensees as well as among lenders in general.

Finally, we believe that an interpretation which allows for a split interest rate is in furtherance of the object of the legislation as reflected in the double purpose of the Act, which has been described by our Supreme Court as follows:

'[T]he borrowing public must be protected against extortionate interest charges and the rates allowed must be sufficient to permit the lender to earn a fair return on his invested capital.'

*Equitable Credit & Discount Co. v. Geier*, 342 Pa. 445, 453, 21 A.2d 53, 57 (1941).

Clearly, consumer protection is better served under the Secretary's interpretation, which allows the consumer to borrow more than $5,000 at a lower effective rate than would be available under the interpretation advanced by the petitioner, and there is no question that the Secretary's regulation would allow a fair return on invested capital.

The petitioner's second argument against the validity of the regulation is that it is contrary to the Secretary's previous interpretation of the statute. It is apparent from the affidavits and supporting documents that at least some officials in the Department of Banking did at one time interpret and enforce Section14A of the Act as providing for a straight 6 percent interest on loans over $5,000.[7] We are not pre-

---

[7] In one instance, an unsigned letter was issued in 1963 by the Consumer Credit Bureau to all Pennsylvania Consumer Discount Companies which interpreted Section 14A of the Act as mandating a straight 6 percent rate. In another instance, the Consumer Credit Bureau, through a letter signed by the Examination Supervisor, directed the petitioner to recompute the interest to 6 percent on the entire amount of two accounts that had exceeded the then-applicable $3,500 limit. The Secretary does not dispute that the statute had been previously so interpreted:

pared to hold, however, that the regulation is invalid because the interpretation now given to the statute may be inconsistent with previous informal interpretations made by officials within the Department of Banking.[8] Moreover, Section 14A of the Act was not subject of an actual regulation promulgated by the Secretary until the issuance of the regulation in question, which we believe tracks the statute and is therefore valid. *See Pennsylvania Assoc. of Life Underwriters v. Insurance Department*, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977).

The petitioner's final argument is that the regulation offends the public policy upon which the Act was based. As we noted above, however, this regulation in fact furthers the purposes of the Act by allowing a lower effective interest rate on indebtedness in excess of $5,000.

---

We were aware that past administrations had never clearly resolved the ambiguity contained in the language of this section, but had generally interpreted it to mean that if a licensee made a loan in excess of $5,000, then the entire loan must be made at a rate of 6% simple interest and not just the excess over $5,000. Since there had been no prior formal expression of this viewpoint in the form of a regulation, and since we were in the process of promulgating extensive regulations under the Consumer Discount Company Act (the "CDCA"), we concluded that this was the appropriate time to resolve the ambiguity and provide clarification of the licensee's lending powers.

Whitesell, note 5, *supra*.

[8] The petitioner also alleges that the uniform interpretation of the consumer discount industry has been that interest on loans over $5,000 is 6 percent on the entire amount. Affidavits from officers of other consumer discount companies dispute this, asserting that while they believed the split-rate interpretation more reasonable, they followed conservative practice and did not make any loans over $5,000 (or the then-prevailing limit). We do not think, however, that this issue is material to the resolution of this case.

We shall therefore deny the petitioner's motion for summary judgment and grant the motions of the Secretary and Signal Consumer Discount Company.

Judge MENCER dissents.

ORDER

AND Now, this 17th day of August, 1979, the motion for summary judgment of Beneficial Consumer Discount Company is hereby denied, and the motions for summary judgment of the Secretary of Banking and Signal Consumer Discount Company are hereby granted.