**Dora CURRY**

v.

**FIDELITY CONSUMER DISCOUNT COMPANY.**

Civ. A. No. 86–5052.

United States District Court, E.D. Pennsylvania.

March 26, 1987.

Autherine B. Smith, Community Legal Services, Philadelphia, Pa., for plaintiff.

Lawrence T. Phelan, Federman & Phelan, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me cross-motions for summary judgment in an action by a consumer against a creditor for alleged violations of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.* and of Regulation Z of the Federal Reserve Board, 112 C.F.R. §§ 226.1 *et seq.* as amended. Pursuant to the jurisdiction granted this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337, summary judgment will be entered in favor of the plaintiff.

### I. *Facts*

The following facts are unrefuted. In July of 1984, plaintiff's grandson asked her to co-sign a loan for the purchase of a car. She agreed. Plaintiff accompanied her grandson to a car dealership, DeSimone Service Center, A–1 used cars, on July 18, 1984. Upon their arrival, a DeSimone employee drove plaintiff and her grandson to the place of business of the defendant, Fidelity Consumer Discount Company. The DeSimone employee waited while the plaintiff and her grandson, having been placed in separate areas, signed various loan documents. Among the documents the plaintiff signed on July 18 was a mortgage note on her home.

The only contact the plaintiff had with the defendant was her appearance in defendant's office on July 18. The only documents signed with reference to the loan at issue here were signed on July 18. The plaintiff and her grandson were transported back to the car dealership after their business with Fidelity was completed. Later that afternoon, the plaintiff's grandson drove home in the car he had purchased.

The plaintiff sent a Truth-in-Lending Notice of Rescission regarding the car loan described above to the defendant by letter dated June 17, 1986. The defendant responded by letter dated July 23, 1986 with a refusal to rescind. As of June 17, 1986, payments on the loan totaled $3,604.77. The principal amount of the loan was $4,412.62 with various charges bringing the total amount financed to $4,999.97. The loan terms called for an annual percentage rate of approximately 27% over four years, so that total payments would amount to $8,225.76.

## II. *Issues*

The plaintiff alleges three violations of the Truth-in-Lending Act. First, the plaintiff alleges that the defendant improperly disbursed funds prior to the expiration of the statutory rescission period. Second, the plaintiff maintains that the defendant circumvented the rescission period by having her sign a post-dated "Certificate of Confirmation" on July 18, 1984 which certified that she did not exercise her right to rescission. Finally, the plaintiff asserts that a charge for personal property insurance should have been disclosed as a finance charge.

## III. *The Law*

Congress delineated its purposes in exacting TILA in § 1601 of the Act. The Act is designed to permit comparison by consumers of available credit terms and assure full disclosure of credit terms so that the consumer's final decision will be an informed one. 15 U.S.C. § 1601(a). The purposes of the Act are further demonstrated through a standard of strict liability against creditors who fail to make mandated disclosures. 15 U.S.C. § 1640(a).

Among the disclosures required of creditors is notification to the consumer of the consumer's unequivocal right to rescind the transaction within three business days of its consummation. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b). During this three-day rescission period, the creditor may not disburse funds, deliver materials, or perform any services connected with the credit agreement. 12 C.F.R. § 226.23(c).

As this court noted in *Laubach v. Fidelity Consumer Discount Company*, No. 85–1902, (April 9, 1986) [Available on WESTLAW, DCTU database], two purposes underly the statutory rescission period:

> First, it allows the consumer an opportunity to reflect, in the quiet of her home and without any pressure, whether to undertake a loan transaction which would create an encumbrance on the home. Second, it insures that if the consumer decides to cancel, she will not be without the ability to do so (i.e., she cannot spend the loan proceeds). *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 249 n. 9 (6th Cir.1980).

*Laubach, supra,* slip op. at 9–10.

When the rescission provisions are not complied with by a creditor, the consumer has the right to rescind the transaction within three years of its consumation. 15 U.S.C. § 1635(f); *Reid v. Liberty Consumer Discount Company of Penna.*, 484 F.Supp. 435, 439 (E.D.Pa.1980). A creditor who does not comply with all of the Act's disclosure provisions is also subject to civil penalties in the amount of twice the finance charges connected with the loan up to a maximum of $1,000. 15 U.S.C. § 1640(a)(2)(A). Finance charges include interest, service charges, credit report fees and certain types of insurance. 15 U.S.C. § 1605.

TILA mandates specific rescission procedures. 15 U.S.C. § 1635(b). These provisions apply to both rescissions which occur within the three-day "cooling-off" period and those which take place within the three-year limitation period extended for credit purchasers whose creditors have not

complied with § 1635 and/or its regulations. *See e.g., Valentine v. Influencial Savings and Loan Association,* 572 F.Supp. 36, 38 (E.D.Pa.1983). The consumer must exercise his or her right by notifying the creditor of rescission. 15 U.S.C. § 1635(b). Upon rescission, the creditor is no longer liable for finance charges, and the security interest held by the creditor becomes void. *Id.*

## IV. *Conclusions*

### a. *The Right to Rescind*

The plaintiff alleges three TILA violations as the basis for her right to rescind. While defendant's failure to disclose the personal property insurance charge as a finance charge is of questionable materiality, the transaction may be rescinded on a finding of either early disbursal of funds or the past-dating of the certificate of confirmation.

Plaintiff asserts that she had contact with the defendants on only one occasion. She maintains that no documents related to the loan transaction were signed by her at any time other than her visit to the defendants' office on July 18, 1984. While Fidelity denies post-dating any documents, the company offers no evidence indicating that the check and Certificate of Confirmation were signed on a date other than July 18. The defendants do not claim that the plaintiff visited their office on or after the dates appearing on the check or Certificate. The defendants do not claim that the documents were mailed to and returned by the plaintiff. The defendants do not claim that a representative from their office visited the plaintiff on or after the dates appearing on the check and Certificate. The defendants offer no explanation for the car dealership's release of a financed car on the same day the loan documents were signed. At no point in their Memorandum do the defendants deny that the plaintiff had contact with them on only one occasion. The defendants merely state that the plaintiff admitted at deposition that she had no memory of signing a check or knowledge of when the funds were disbursed, and that the fact that the two documents were dated

July 23, 1984 "speaks for itself." The defendants are mistaken.

In *Laubach v. Fidelity Consumer Discount Company, supra,* this Court recently found the same defendants who appear in this case in violation of TILA and the regulations promulgated pursuant to that Act. The violations alleged in *Laubach* were identical to those claimed here. This Court found that although the defendants designed the transaction so that it appeared to technically comply with TILA's requirements, the procedures violated "both the letter and the intention of the Act and its regulations."

As in *Laubach,* supra, the defendants in the instant case circumvented the mandatory three-day rescission period by having the plaintiff sign a post-dated certificate of confirmation at the commencement of the period. By having the plaintiff sign a post-dated check on the day the transaction was consummated, the defendants deprived the plaintiff of the benefits and protections she was given by law. As noted earlier, TILA's rescission provisions are designed to permit consumers time to think about the terms of their financial commitment. By post-dating documents central to the loan and security commitment, the defendants effectively foreclosed the plaintiff from exercising her statutory right to rescind. In sum, the defendants failed in their legal obligation to provide clear notice to the plaintiff of her rescission rights in direct violation of § 1635(a).

Because the § 1635(a) violations discussed above, the plaintiff was permitted to rescind the loan agreement at any time within three years of its consummation. She timely rescinded the agreement with Fidelity by letter dated June 17, 1986.

### b. *Civil Penalty*

Because the defendants acted in controvention of TILA, they are subject to the civil penalties provided for in § 1640(a). The plaintiff's payment of finance charges exceeded the $1,000.00 maximum. Her civ-

il penalty recovery is therefore limited to $1,000.00.

An appropriate Order follows.

## ORDER

AND NOW, this 26th day of March, 1987, upon consideration of the parties' cross-motions for summary judgment, it is hereby Ordered that:

1. Defendants motion for summary judgment is DENIED.

2. Plaintiff's motion for summary judgment is GRANTED.

3. The loan agreement dated July 18, 1984 was validly rescinded on June 17, 1986.

4. The defendants shall pay the plaintiff $1,000 in statutory penalties within twenty (20) days from the date of this Order.

5. Plaintiff is not liable for any finance charges or other charges arising from the rescinded transaction.

6. Defendant shall terminate and satisfy the mortgage it holds on plaintiff's residence upon payment by plaintiff of $807.85, representing the balance due on the loan principal. For purposes of this paragraph, "principal" includes all cash payments, totalling $4,412.62, made on the loan of $8,225.76, and does not include any charges eliminated by paragraph 5 of this Order. In determining the principal balance, plaintiff has received credit for all payments made over the life of the transaction.

7. Plaintiffs shall submit, not later than twenty (20) days from the date of this Order, full and complete affidavits reflecting their attorney's fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

AND IT IS SO ORDERED.